# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| **THE NOCO COMPANY,**<br>30339 Diamond Parkway #102<br>Glenwillow, Ohio 44139,<br><br>     Plaintiff,<br><br> v.<br><br>**CTEK, INC.**<br>c/o Annette Gustafson Guenther, Statutory Agent<br>55 Shuman Blvd. #850<br>Naperville, Illinois 60563,<br><br>*Serve also:*<br><br>9347 Ravenna Road, Ste. B<br>Twinsburg, Ohio 44087,<br><br>**CTEK POWER INC. (CTEK, INC.)**<br>c/o Kenneth Palmman, Statutory Agent<br>2374 Edison Blvd.<br>Twinsburg, Ohio 44087,<br><br>**CTEK SWEDEN AB**<br>c/o Jon Lind<br>ROSTUGNSVÄGEN 3<br>SE-776 70 VIKMANSHYTTAN<br>SWEDEN<br><br>     Defendants. | CASE NO.<br><br>JUDGE |

## VERIFIED COMPLAINT
### (JURY DEMAND ENDORSED HEREON)

Plaintiff The NOCO Company ("***NOCO***" or "***Plaintiff***"), by and through counsel,

and for its Complaint against Defendants CTEK, Inc., a/k/a CTEK Power Inc. ("***CTEK***

*USA*") and CTEK Sweden AB ("***CTEK Sweden***") (together, the "***Defendants***" or "***CTEK***") states as follows:

## Introduction

1. NOCO brings this action because CTEK, a competitor of NOCO, stole NOCO's trade secrets and because CTEK has otherwise engaged in dishonest and unlawful acts that damage NOCO. NOCO has been irreparably harmed by this theft of trade secrets and seeks injunctive relief to obtain the return of its property and to prevent any further dissemination of its trade secrets. Further, NOCO seeks damages as a result of CTEK's unlawful conduct and to stop CTEK's unfair and unlawful business practices, which have spanned three continents and continue to damage NOCO and its business.

## Parties

2. NOCO is an Ohio corporation with a principal place of business located in Cuyahoga County, Ohio. NOCO is in the business of designing, manufacturing and marketing consumer electronics and is a global leader in battery chargers for vehicles.

3. CTEK USA is a Delaware corporation, with a principal place of business located in Illinois. CTEK USA is registered to do business in the State of Ohio under the name "CTEK Power, Inc. (CTEK, Inc.)." Upon information and belief, CTEK, Inc. is a subsidiary of CTEK Sweden.

4. CTEK Sweden is a corporation organized and existing under the laws of Sweden, with its principal place of business at Rostugnsvägen 3, Vikmanshyttan, SE-776 70, Sweden. CTEK describes itself as a "global brand in the care and maintenance of vehicle batteries."

5. CTEK and NOCO compete worldwide in the design, manufacturing and sale of battery chargers for vehicles. Throughout the years, CTEK has engaged in a variety of unfair and dishonest competition practice—varying from publishing a libelous "analysis" of NOCO's products, to unlawfully entering and reviewing NOCO's materials after-hours at a trade show, to now out-right stealing NOCO's trade secrets. NOCO files this action to halt such unlawful activity from continuing, once and for all.

## Jurisdiction and Venue

6. This Court has jurisdiction over the subject matter of this action under 28 U.S.C § 1331. Specifically, NOCO brings claims against CTEK for violation of, and conspiracy to violate, The Defend Trade Secrets Act of 2016, 18 USC § 1831 *et seq*. This Court, therefore, has supplemental jurisdiction of all state law claims under 28 U.S.C. § 1367.

7. Further, this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332(a)(1). NOCO has a principal place of business and place of incorporation in Ohio. CTEK USA has a principal place of business in Illinois and place of incorporation in Delaware. CTEK Sweden has its principal place of business and place of incorporation in Sweden. Accordingly, there is complete diversity among the parties. Further, the amount in controversy is in excess of $75,000.

8. This Court has personal jurisdiction over Defendants. CTEK USA is registered to do business in the State of Ohio, conducts business within the state and, upon information and belief, operates out of a location in Twinsburg, Ohio. Upon information and belief, CTEK Sweden owns CTEK USA and directs and controls CTEK USA's operations in Ohio.

9. Further, this Court has personal jurisdiction over Defendants because all of the unlawful, tortious acts specified herein were directed at NOCO, which has its principal place of business in Glenwillow, Ohio and because NOCO has suffered damage in this District arising from the Defendants' unlawful, tortious acts.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

### NOCO Maintains and Uses "LAD Books" to Generate, Track and Convert Leads to Customers

11. NOCO has developed a proprietary sales tool used by its employees called the "Book of LAD," which stands for "Leads, Actions and Discussions" (a "**LAD Book**" or "**LAD Books**").

12. The LAD Book was developed by NOCO and is designed to maximize sales leads and contains secrets, thoughts and designs regarding the company's sales methodology, targets, and financial impact.

13. The LAD Book allows NOCO employees to: track touches with potential customers, take confidential notes regarding leads (including pricing information), note other market intelligence learned during discussions and meetings, and ensure that employees can follow up and generate sales.

14. The LAD Book is an interactive tool utilized throughout expositions and conventions that NOCO attends—with a new book generated at each event. The LAD Book allows for efficient and effective follow-up, sales generation, lead conversion, and the implementation of sales strategy at an organizational and market level.

15. The LAD Books contain information about the needs of various customers and distributors, including pricing information, discount information, market

penetration and numerous other pieces of information are also compiled in each of the LAD Books.

16. The LAD Books created in connection with NOCO's competitive business activity are confidential and treated as such.

17. The LAD Books created during expositions, conventions and other marketing opportunities have generated substantial sums for NOCO, and the A4 LAD book was no different, containing millions of dollars in sales leads.

18. Accordingly, the LAD Books qualify as trade secrets under 18 U.S.C. § 1893(3) because they contain financial, business, technical and other information, including plans, methods, processes and procedures from which NOCO derives independent economic value by not being known by others and which NOCO takes measures to protect and keep secret.

**NOCO Attends the Australian Auto Aftermarket Expo in April 2019**

19. From April 4, 2019 to April 6, 2019, NOCO was an exhibitor at the Australian Auto Aftermarket Expo in Melbourne, Australia (the "***Expo***"), which is hosted by the Australian Automotive Aftermarket Association ("***A4***").

20. The Expo provides a lucrative opportunity for NOCO to develop contacts, sales leads and relationships with potential customers in Australia and globally.

21. NOCO's Oceania Sales Director was present at the Expo and was responsible for creating and maintaining the LAD Book for the Expo (the "***A4 LAD Book***").

22. CTEK also attended the Expo and had its own booth for exhibition purposes.

23. During the morning of April 4, 2019, NOCO developed the A4 LAD Book, which included at least fifteen different customer leads, notes and action items.

24. NOCO employees continually were updating the A4 LAD Book and kept the A4 LAD Book confidential.

### The A4 LAD Book is Stolen

25. During the early afternoon on April 4, 2019, the Director of NOCO's Oceania Sales determined that the A4 LAD Book was missing and searched the NOCO booth to find it.

26. NOCO's executives and employees suspected that the A4 LAD Book had been stolen.

27. NOCO reported the incident to the Expo's managers and requested that video surveillance be reviewed to identify whether the A4 LAD Book had, indeed, been stolen.

28. Expo security would not review the security footage until NOCO filed a police report.

29. Accordingly, NOCO's Chief Visionary Officer (CVO) and President was required to leave the Expo and make a police report at the police station. NOCO's CVO then waited hours for a copy of the report to be sent to him.

30. Then, NOCO had to then take time to work with Expo security to ensure that security reviewed the footage.

31. This took NOCO substantial time and took its employees away from the Expo floor.

32. NOCO was able to prevail upon security, and Expo security reviewed the camera footage on April 5, 2019, the second day of the Expo.

33. NOCO was not allowed to view the footage; however, NOCO was informed that the A4 LAD Book was stolen.

34. On April 5, 2019, the CEO of the company running the Expo contacted NOCO.

35. The CEO informed NOCO that they were able to identify the thief, confirmed that the thief was an exhibitor at the Expo and that the thief was present at the Expo on April 5, 2019.

36. However, Expo staff refused to reveal to NOCO the thief's name or corporate affiliation.

37. NOCO spent in excess of $180,000 to attend the Expo.

38. The theft damaged NOCO and its ability to conduct its contemplated sales activities at the Expo.

39. The thief stole not just NOCO's A4 LAD Book, which was itself valuable, but also stole NOCO's time, energy and attention from its sales activities at the Expo.

40. Despite best attempts to salvage the Expo, NOCO lost substantial profits because its owner and employees were unable to devote their time and attention to the sales activities at the Expo.

41. Additionally, the thief had complete possession, custody and control of the A4 LAD Book, and all of NOCO's trade secrets, for days, which also substantially damaged NOCO. For two days, the thief continued to show at the Expo and was a free man with the benefit of NOCO's trade secrets.

42. Although NOCO did not know it on April 4th or 5th, the thief was an employee of CTEK.

43. Upon information and belief, the A4 LAD Book was provided to other employees and representatives of CTEK between the theft on April 4, 2019, and the CTEK employee-thief's arrest (more fully described below) on April 6, 2019.

44. Upon information and belief, the CTEK employee-thief had been encouraged to engage in this illegal behavior—because CTEK maintains a corporate atmosphere of unfair competition that fosters such illegal behavior.

### On the Third Day of the Expo, NOCO Learns that CTEK Stole the A4 LAD Book

45. Expo security identified the movements of the thief through security camera footage and was able to determine the thief was an employee of CTEK by the badge worn during the theft.

46. On the third day of the Expo, just prior to the employee-thief's apprehension by Australian police, A4 informed NOCO that the thief was an employee of CTEK.

47. Australian police arrested the CTEK employee-thief, charged him with a misdemeanor and then released him.

48. Upon information and belief, the CTEK employee-thief is a UK national and, despite his arrest, is currently located in Sweden.

49. Despite the arrest, the A4 LAD Book has not been returned to NOCO.

50. NOCO has attempted to salvage the confidential information and sales leads contained in the A4 LAD Book; however, it has not been completely successful, which has only further damaged NOCO.

{K0729386.1} 8

51. As a result of CTEK's illegal conduct, NOCO has been significantly damaged.

52. Specifically, NOCO has incurred irreparable damages as follows: (i) the A4 LAD Book; (ii) the loss of its trade secrets, which have now been disseminated, and (iii) the further dissemination of its trade secrets.

53. NOCO has incurred monetary damages as follows: (i) the loss of its substantial investment in the Expo due to the considerable time NOCO was forced to devote to taking action to discover the theft; (ii) lost profits from the sales the A4 LAD Book would have generated for NOCO; and (iii) lost profits from the sales that NOCO would have been able to generate at the Expo had NOCO not been diverted due to the theft. Further, CTEK has been unjustly enriched by and through its theft of the A4 LAD Book.

## CTEK Has Engaged in Other Acts Against NOCO

54. But the theft of the A4 LAD Book is not the first time that NOCO has caught CTEK engaging in unlawful acts against NOCO.

55. In 2013, CTEK published a false and libelous "analysis" of NOCO's "Genius" product, which spread materially false information regarding NOCO's products in the marketplace.

56. As a result of CTEK's false and libelous "analysis," NOCO was required to seek legal advice to stop CTEK's unlawful activity.

57. Additionally, at the Automechanika Frankfurt exposition in September 2014, NOCO caught CTEK's Chief Executive Officer entering NOCO's booth after hours to review NOCO's non-public materials. Such activity was against the exposition's rules and regulations.

{K0729386.1}                                          9

58. Further, CTEK's reaction since having its employee caught red-handed stealing NOCO's trade secrets has further raised NOCO's suspicions concerning CTEK's ongoing activity.

59. Specifically, the theft occurred on April 4, 2019, and the CTEK's employee-thief continued to act on CTEK's behalf for at least two more days. The employee-thief attended the Expo and, upon information and belief, used NOCO's trade secrets during that time to obtain an unfair and unlawful advantage.

60. At 4:18 AM on April 7, 2019, NOCO's CVO and President received an e-mail from CTEK's (and/or CTEK Sweden's) Chief Executive Officer requesting a phone call. NOCO's CVO and President responded by asking where the A4 LAD Book (trade secrets) were.

61. On April 9, 2019, CTEK's (and/or CTEK Sweden's) Chief Executive Officer contacted NOCO's Chief Visionary Officer and President, by sending a scripted e-mail, wherein he attempted to distance CTEK from the admitted illegal actions of its employee.

62. CTEK informed NOCO that the thief's employment had been terminated and represented that CTEK did not condone the thief's action. Further, CTEK professed that it and its employee did not have any of NOCO's trade secrets in its possession.

63. Despite the admission and acknowledgment from CTEK that its duly authorized representative committed a crime, it has taken no other action to rectify the substantial damages that it inflicted on NOCO.

64. CTEK did not apologize for the criminal act that CTEK acknowledged occurred.

65. CTEK did not return the A4 LAD Book.

66. CTEK did not offer to search for the A4 LAD Book.

67. CTEK did not offer to launch an internal investigation or state that it had investigated the matter —despite the fact the CTEK employee-thief was in possession of NOCO's trade secrets for days.

68. CTEK did not state it had no knowledge of the thief's actions during the Expo.

69. In fact, it is what CTEK omitted from its e-mail that is the most telling.

70. NOCO suspects that, in addition to unlawful conduct during the Expo, CTEK has taken further tortious actions to obtain an unfair competitive advantage against NOCO.

71. Indeed, a CTEK employee has no reason to *steal* NOCO's trade secrets but to benefit CTEK and give CTEK a competitive advantage.

72. Accordingly, NOCO files suit to: (i) be compensated for the substantial damage caused by CTEK's employee-thief; (ii) protect its trade secrets; and (iii) ensure no further damage is done.

## CLAIM ONE
**(Breach of DTSA)**

73. Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

74. This is a claim for injunctive relief and damages under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("***DTSA***").

75. NOCO owns and possesses its trade secrets, including the A4 LAD Book.

76. NOCO's business is international and it operates in interstate and foreign commerce.

77. NOCO developed the A4 LAD Book specifically to engage in interstate and foreign commerce—including in the Australian market.

78. The A4 LAD Book is a trade secret under the DTSA as defined in 18 U.S.C. § 1839(3).

79. The information contained in the A4 LAD Book enables NOCO to organize and effectuate its business strategy, particularly in Australia and New Zealand.

80. The information was collected at NOCO's expense and effort and other entities would benefit greatly from access to the information in the A4 LAD Book, such as NOCO's contacts, strategies, pricing, discounts, distribution plans, details of negotiations, and opportunities in the market.

81. NOCO implements procedures and takes precautions to prevent the information in the LAD Books from being known by others.

82. CTEK, by and through its employee, stole, conveyed, received, and conspired to steal, convey and receive the A4 LAD Book and the trade secrets contained therein to its benefit, in contravention of 18 U.S.C. §1832 (a)(1)-(a)(5).

83. As a direct and proximate cause of CTEK's misappropriation of NOCO's trade secrets, NOCO suffered damages.

84. Because CTEK's conduct was willful, malicious, outrageous, wanton, deliberate, and made with full knowledge of, and in total disregard for NOCO's rights,

punitive and statutory damages, in addition to attorney fees, against CTEK are also warranted.

## CLAIM TWO
## (Breach of Ohio Uniform Trade Secrets Act)

85. Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

86. At all relevant times, NOCO has maintained confidential and proprietary information and "trade secrets," within the meaning of the Ohio Uniform Trade Secrets Act. R.C. §§1333.61 – 1333.69, including the A4 LAD Book.

87. CTEK wrongfully acquired NOCO's trade secrets and is using NOCO's trade secrets and other confidential and proprietary information for its benefit, without NOCO's consent, and to the exclusion of NOCO.

88. As a direct and proximate cause of CTEK's conduct, NOCO has been damaged and will continue to be damaged in an amount to be proven at trial.

89. Because CTEK's conduct was willful, malicious, outrageous, wanton, deliberate, and made with full knowledge of, and in total disregard for NOCO's rights, punitive damages and attorney fees against CTEK are also warranted.

## CLAIM THREE
## (Conversion)

90. Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

91. NOCO owned and had a right to possess the A4 LAD Book.

92. CTEK obtained NOCO's property—the A4 LAD Book—through actual theft.

93. CTEK's conduct constitutes conversion.

94. As a direct and proximate cause of CTEK's conversion, NOCO has suffered and will continue to suffer damages, including punitive damages, in an amount to be proven at trial.

## CLAIM FOUR
### (Violation of O.R.C. 2307.60 and 2307.61)

95. Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

96. CTEK, by and through its employee, deprived NOCO of its possession and use of the A4 LAD Book.

97. CTEK has committed a theft offense as defined in O.R.C. § 2913.01.

98. As a direct and proximate cause of CTEK's theft offense, NOCO has suffered and will continue to suffer damages in an amount to be proven at trial. Further, NOCO is entitled to statutory damages, punitive damages and attorney fees as a result of CTEK's illegal conduct.

## CLAIM FIVE
### (Civil Conspiracy)

99. Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

100. CTEK has entered into a malicious combination—as between CTEK USA and CTEK Sweden and as between CTEK and the employee-thief by, *inter alia*, conspiring to and committing illegal acts including, but not limited to, the theft of the A4 LAD Book.

101. CTEK, acting together and with the employee-thief has committed unlawful acts in furtherance of their conspiracy by, at least, stealing the A4 LAD Book.

102. As a direct and proximate cause of these unlawful acts, NOCO has suffered and will continue to suffer damages, including punitive damages, in an amount to be proven at trial.

## CLAIM SIX
### (Tortious Interference with Business Relations)

103. Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

104. In connection with its business activities in the consumer electronics industry, NOCO has engaged in numerous business relationships, including with numerous companies listed in the A4 LAD Book.

105. CTEK is aware of these business relationships by virtue of the theft of the A4 LAD Book.

106. CTEK, acting without privilege or justification, has tortiously interfered with NOCO's business relationships by, *inter alia*, stealing the A4 LAD Book, preventing NOCO from using the A4 LAD Book and by using the A4 LAD Book to contact and solicit NOCO's customers, usurp business opportunities and unfairly take sales away from NOCO.

107. CTEK's conduct was intentional, willful and malicious.

108. As a direct and proximate cause of CTEK's tortious interference with NOCO's business relationships, NOCO has suffered and will continue to suffer damages, including punitive damages in an amount to be proven at trial.

**WHEREFORE,** NOCO prays for judgment as follows:

A. A temporary restraining order, preliminary and permanent injunction;

B. As to Claim One, compensatory damages, statutory damages, attorney fees and costs;

C. As to Claim Two, compensatory damages, statutory damages, attorney fees and costs;

D. As to Claim Three, compensatory and punitive damages;

E. At to Claim Four, compensatory and statutory damages;

F. As to Claim Five, compensatory and punitive damages;

G. As to Claim Six, compensatory and punitive damages;

H. Attorney fees and costs, as allowed by statute and for its intentional, willful and malicious actions; and

I. Such other relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff respectfully demands a trial by jury pursuant to Fed. R. Civ. P. 38.

*/s/ Jon J. Pinney*
JON J. PINNEY (0072761)

Respectfully Submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/ Jon J. Pinney*
JON J. PINNEY (0072761)
JUSTINE LARA KONICKI (0086277)
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: jjp@kjk.com; jlk@kjk.com

*Counsel for Plaintiff*

**STATE OF OHIO** )
) **SS: VERIFICATION**
**COUNTY OF CUYAHOGA** )

I, Jonathan Nook, the President and Chief Visionary Officer of The NOCO Company, being first duly sworn, state that I have reviewed the foregoing Complaint. The allegations contained therein are true and accurate to the best of my knowledge and belief.

_____
Jonathan Nook

**SWORN TO BEFORE ME AND SUBSCRIBED** in my presence this 15Th day of April, 2019.



NOTARY PUBLIC
Jennifer E. Remendowski
My commission Expires 01-18-21

{K0728196.1} 18