IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE NOCO COMPANY, | ) | CASE NO. 1:19 CV 00853 DCN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| CTEK, INC. *et al.*, | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |
| | ) | |

This matter is before the Court on CTEK, Inc.'s and CTEK Sweden's Motion to Dismiss Plaintiff's Second Amended Complaint. (ECF #39). For the reasons set forth below, this motion is DENIED in its entirety. Also pending before this Court is NOCO Company's Motion to Compel Production of Documents. (ECF #56). In light of this Court's Memorandum Opinion and Order, NOCO Company's Motion to Compel is DENIED without prejudice as moot. NOCO Company may again move to compel the requested documents during general discovery on the merits, if necessary.

## Background[1]

The NOCO Company ("NOCO") filed this lawsuit on April 16, 2019 against CTEK, Inc. and CTEK Sweden AB (collectively, "CTEK"), alleging six causes of action: (1) breach of the Defend Trade Secrets Act, 18 U.S.C. § 1836 (DTSA); (2) breach of the Ohio Uniform Trade Secrets Act, O.R.C. § 1333.61 – 1333.69 (OUTSA); (3) conversion; (4) "theft offense" under O.R.C. § 2307.60 and 2307.61; (5) civil conspiracy; and, (6) tortious interference with business relations. (*See generally*, Compl. ECF # 1). NOCO has since filed two amended complaints. (ECF # 22, 32). The parties have had since May 9, 2019 to conduct limited jurisdictional discovery. (ECF # 14).

On August 23, 2019, CTEK filed a Motion to Dismiss Plaintiff's Second Amended Complaint. (ECF # 39). NOCO filed its opposition. (ECF #65). CTEK filed a reply. (ECF #69). This Court granted NOCO's motion for leave to file a sur-reply. (ECF #70). Also currently pending before this Court is NOCO's Motion to Compel Production of Documents. (ECF #56). NOCO seeks the production of certain documents allegedly relevant to its argument that CTEK Sweden and CTEK, Inc. are "alter egos" for the purpose of establishing personal jurisdiction over both defendants. (*Id.*).

NOCO is an Ohio corporation with its principal place of business in Cuyahoga County, Ohio. (Second Amended Compl., hereinafter "Compl.," ¶ 9). NOCO designs, manufactures and markets

---

[1] The facts as stated in this Memorandum and Order are taken from Plaintiff's Second Amended Complaint and the exhibits submitted in support of its brief in opposition to Defendant's motion to dismiss. The facts should not be construed as findings of this Court. In a motion to dismiss, the Court is obligated, for the purposes of that motion, to accept as true the facts set forth by the non-moving party. However, facts related to the issue of personal jurisdiction are required to have some evidentiary support.

battery chargers and related products and is a global leader in battery chargers for vehicles.

CTEK Sweden is a Swedish corporation with its principal place of business located in Sweden. It has no location in Ohio or the United States. NOCO alleges that CTEK Sweden's presence in the United States began in or about 2002 when it started selling battery chargers globally, engaging in indirect sales of its products to retailers, distributers, and manufacturers. (Compl. ¶ 30). CTEK Sweden has publicly identified the U.S. as a target growth market and describes itself as a "global brand in the care and maintenance of vehicle batteries." (Lind Depo. Ex. 2; Compl. ¶ 13). It designs products for the U.S. market, advertises the CTEK brand in the U.S., and made direct sales to the U.S. totaling $211,659 in 2016 and 2017. (Compl. ¶ 80-81, Ex. 2). In 2004, CTEK Sweden created an American sales arm – CTEK, Inc. – a wholly owned subsidiary of CTEK Sweden. (Compl. ¶ 14). CTEK Sweden generates millions of dollars each year from sales made in the United States through CTEK, Inc. (Lind Depo. 34:13-35:3).

CTEK, Inc. is a Delaware corporation headquartered in Illinois. It has a total of four employees in the United States. Two of these employees work out of the headquarters in Illinois, and one employee works out of a leased office in Ohio. The location of the fourth employee is not known. (Lind Depo. 26:18 - 27:2). In 2017 and 2018, CTEK, Inc. derived only 2% of its total revenue from sales to Ohio. (DuMelle Decl. ¶ 5). CTEK, Inc.'s first corporate headquarters was located in Twinsburg, Ohio, only 3.6 miles from NOCO's headquarters. CTEK, Inc. also previously had a second location in Twinsburg, but currently operates only from its former headquarters. (Compl. ¶ 10). CTEK, Inc. contracts with a third-party logistics company in Ohio, receives product shipments in Ohio, warehouses products in Ohio, conducts warranty reclamation activities in Ohio, and maintains an interactive website. (*See* Lind Depo. at 30:12-30:17, 86:15-86:22, 128:22-130:7;

Ex. 8, 20, 26 ). CTEK Sweden issues warranties to U.S. customers in connection with sales made through CTEK, Inc. (Compl. ¶ 81).

NOCO alleges that CTEK Sweden and CTEK, Inc. unfairly compete with NOCO. Both NOCO and CTEK Sweden exhibited their products at the Australian Auto Aftermarket Expo in Melbourne, Australia from April 4 to April 6, 2019.(Compl. ¶ 117). At the Expo, NOCO developed a notebook called the "A4 LAD Book" which contained pricing, discount, and market penetration information for various customers, as well as key contacts, strategies, distribution plans, details from negotiations, and opportunities in the market. (Compl. ¶ 112, 122). This information related to divisions of United States companies. (Compl. ¶ 124). NOCO alleges that the notebook also contained employees' thoughts, plans, and strategies which they developed based on the information they gathered, including "secrets, thoughts, and designs regarding the company's sales methodology, targets, and financial impact" as well as "touches with potential customers, confidential notes regarding leads (including pricing information), and notes on market intelligence learned during discussions and meetings." (Compl. ¶ 110-111). The notebook contains "information concerning how NOCO does business," along with "key market insight." (Compl. ¶ 190-191). NOCO kept the book confidential by having its employees monitor the book at the Expo, storing the book on the non-public side of NOCO's booth at the Expo, employing non-disclosure agreements, marking the information confidential, and restricting access internally. (Compl. ¶ 108-115, 126).

NOCO also alleges that the A4 LAD notebook was valuable in that prior notebooks have generated "substantial sums," and that the A4 LAD notebook contained sales leads potentially worth millions of dollars. (Compl. ¶ 115). The notebook would provide competitors such as CTEK with "insight not only into customer information, but also NOCO's proprietary methods and strategies"

-4-

which has the "significant economic value of not being known to others."

NOCO allegs that during the Expo, a CTEK Sweden employee stole the A4 LAD Book from NOCO's booth and shared the book with two other CTEK Sweden employees who were present at the Expo. (Compl. ¶ 149-153). NOCO alleges that CTEK Sweden used the notebook to compete with NOCO during the Expo because it was in the possession of CTEK Sweden employees within that time frame. (Compl. ¶ 144-146). The CTEK Sweden employees who stole the notebook have traveled to the U.S., but NOCO requires additional discovery to determine if these employees provide regular services to CTEK, Inc. NOCO alleges that CTEK disclosed and used NOCO's trade secret information "to obtain an unfair and unlawful advantage over NOCO, including in CTEK's operations in the United States of America and Ohio." (Compl.¶ 168).

CTEK argues that NOCO's Second Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. CTEK advances five arguments relative to personal jurisdiction: (1) neither CTEK, Inc. nor CTEK Sweden is "at home" in Ohio or the United States; (2) the Ohio long-arm statute precludes jurisdiction over CTEK, Inc.; (3) the federal long-arm statute precludes jurisdiction over CTEK Sweden; (4) exercising personal jurisdiction over either Defendant does not comport with Due Process; and, (5) NOCO fails to allege facts sufficient to overcome the presumption that CTEK Sweden and CTEK, Inc. are separate entities.

CTEK further asserts that NOCO has failed to state a claim for misappropriation of trade secrets under the DTSA and OUTSA. Lastly, CTEK argues that NOCO's remaining common law claims should be dismissed as preempted by NOCO's OUTSA claim.

## Discussion

### I. Personal Jurisdiction

When personal jurisdiction is challenged, the plaintiff bears the burden of demonstrating that jurisdiction is proper. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). In the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. *Theunissen, supra*, 935 F.2d at 1458 (6th Cir. 1991); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974). Ordinarily, a plaintiff bears only the burden of demonstrating facts which support a *prima facie* case for jurisdiction. *Theunissen*, 935 F.2d at 1458. But CTEK argues that "because NOCO sought and received extensive jurisdictional discovery, it must establish jurisdiction by a preponderance of evidence. *Theunissen*, 935 F.2d at 1458."

When ruling on a 12(b)(2) motion to dismiss, the trial court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Serras v. First Tenn. Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). "The weight of the plaintiff's burden, however, depends on whether the trial court chooses to rule on written submissions or to hear evidence on the personal-jurisdiction issue . . . ." *Id.* Here, the parties engaged in limited jurisdictional discovery but did not request an evidentiary hearing. The Sixth Circuit has held that the appropriate burden of proof in this situation is that of the *prima facie* showing: "[o]rdinarily, the plaintiff must prove jurisdiction by a preponderance of the evidence. That standard does not apply in this case, however, because (although there was discovery) there was no evidentiary hearing on the jurisdiction question." *Dean*

*v. Motel 6*, 134 F.3d, 1269, 1272 (6th Cir. 1998). The *Dean* court held that the appropriate standard was to "view the pleadings and affidavits in a light most favorable to the plaintiff," and that "the plaintiff need only make a prima facie showing of jurisdiction." *Id.*

A.  <u>CTEK, Inc</u>.

To determine whether personal jurisdiction is proper in a diversity case, district courts must apply the law of the state in which they sit. *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980), cert. denied, 450 U.S. 981 (1981). In Ohio, personal jurisdiction may be established by minimum contacts with the state as defined in Ohio Rev. Code § 2307.382, Ohio's long arm statute, which states, in pertinent part, as follows:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.
>
> . . .
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be inured thereby in this state.

O.R.C. § 2307.382; see also, *Pittock v. Otis Elevator Co.*, 8 F.3d. 325 (6th Cir. 1994).

Although CTEK, Inc. derives only 2% of its revenue from sales to Ohio, there is no dispute that CTEK, Inc. regularly does or solicits business and engages in a persistent course of conduct in Ohio through its Twinsburg Office. Therefore, if CTEK, Inc. misappropriated NOCO's trade secrets, it should have reasonably expected that NOCO would be injured in Ohio where NOCO is headquartered. *See Safety Today, Inc. v. Roy*, 2:12-cv-510, 2012 U.S. Dist. LEXIS 86966 at *6-7

(S.D. Ohio June 22, 2012) (finding the defendants could have reasonably expected that injury would occur in Ohio when they stole customer lists and confidential information from their former employer which was located in Ohio). Thus, Ohio's long-arm statute is satisfied.

Having determined that CTEK, Inc. is generally subject to personal jurisdiction on this matter in Ohio, the Court must further determine whether jurisdiction would be properly exercised in this particular case. In *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968), the Sixth Circuit devised the following test to determine when a District Court may impose specific personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from defendant's activities there. Third, the acts of a defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make a exercise of jurisdiction over the defendant reasonable.

CTEK, Inc. purposefully availed itself of the privilege of acting in Ohio. CTEK, Inc. operates an office in Ohio, warehouses products in Ohio, accepts deliveries in Ohio, and issues warranties to customers in Ohio.

The cause of action asserted by NOCO is directly connected to CTEK, Inc.'s activities in Ohio. NOCO alleges that CTEK Sweden shared the contents of the A4 LAD Book with CTEK, Inc. and usurped business opportunities from NOCO in Ohio and the United States. Because NOCO bears only the burden of a *prima facie* showing, and the parties have not conducted discovery relative to the merits of NOCO's claims, NOCO does not have to allege the precise ways in which CTEK, Inc. may have acquired the notebook from CTEK Sweden or exactly how it used the notebook in Ohio. *See Autodesk, Inc. v. Zwcad Software Co.*, No. 5:14-cv-01409-EJD, 2015 U.S. Dist. LEXIS 63610 at *15 (May 13, 2015) (remarking that where "discovery has not yet commenced, it would be

unreasonable to require a plaintiff to demonstrate the precise ways in which Defendants may have used their trade secrets, given that Defendants are the only ones who possess such information"). Holding otherwise would require NOCO to prove its entire case before conducting any discovery relative to the merits. Further, the A4 LAD Book allegedly contains the type of information that CTEK, Inc. could use to compete with NOCO in the Ohio market: strategies, negotiation details, market opportunities, etc.

The exercise of jurisdiction over CTEK, Inc. is reasonable. "Where the first two elements of the specific jurisdiction test are satisfied, the exercise of jurisdiction over the non-resident is presumed to be reasonable," and "[t]he burden lies with the defendant to establish that jurisdiction is not reasonable." *Fabec v. Debt. Mgmt. Partners, LLC*, No. 1:18-cv-1537, 2018 U.S. Dist. LEXIS 172037 at *25-26 (N.D. Ohio Oct. 4, 2018). CTEK, Inc. fails to satisfy its burden, relying only on its assertion that the first two *Southern Machine* elements are not satisfied. CTEK, Inc. makes no attempt to explain why exercising jurisdiction would be unreasonable in light of its contacts with Ohio. Consequently, this Court finds that the exercise of personal jurisdiction over CTEK, Inc. in this matter is fair and proper.

B.  CTEK Sweden

Likewise, the exercise of personal jurisdiction over CTEK Sweden is proper under the federal long-arm statute, Fed. R. Civ. P. 4(k)(2). A federal court may exercise jurisdiction over a foreign defendant under Civ. R. 4(k)(2) when four requirements are met: (1) the claim against the defendant must arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction; (3) the exercise of jurisdiction must be consistent with the laws of the United States; and, (4) the exercise of jurisdiction must be consistent with the Constitution.

*See, Inc. v. Imago Eyewear Pty., Ltd.*, 167 F. App'x 518, 521 (6th Cir. 2006). CTEK Sweden concedes the first two requirements: that NOCO's claim arises under federal law, and CTEK Sweden is not subject to the personal jurisdiction of any state court of general jurisdiction. CTEK Sweden does argue, however, that exercising jurisdiction over it would contravene Constitutional due process because NOCO's claims do not arise from CTEK Sweden's purposeful contacts with the United States. In determining whether exercising jurisdiction over a foreign defendant comports with Due Process, the analysis is identical to the traditional personal jurisdiction analysis, except courts review contacts with the U.S. as a whole rather than the forum state. *See id.* at 522.

CTEK Sweden purposefully availed itself of the privilege of acting in the U.S. because it makes direct sales to the U.S. and U.S. companies and sends its products to CTEK, Inc. – a U.S. corporation – for the purpose of selling and distributing its products in the U.S. The cause of action arises from CTEK Sweden's contacts in the United States, namely, CTEK Sweden's purposeful use of the U.S. corporation CTEK, Inc. to distribute its products in the U.S. The A4 LAD Book contains the type of information relating to U.S. companies that CTEK Sweden could use to compete with NOCO in the U.S., and CTEK Sweden's products compete with NOCO in the U.S. through its U.S. contact, CTEK, Inc. Lastly, the exercise of personal jurisdiction over CTEK Sweden is reasonable because the first two *Southern Machine* elements are met, and CTEK Sweden has failed to satisfy its burden in showing the contrary. CTEK Sweden fails to explain how it would be burdened by defending this action in the United States when its employees and officers regularly travel to the United States and all relevant witnesses speak English. CTEK again relies solely on its assertions that the first two *Southern Machine* factors are not satisfied. Consequently, this Court finds that the exercise of personal jurisdiction over CTEK Sweden in this matter would be fair and proper.

In this diversity case, NOCO has set forth specific facts making a *prima facie* showing that this Court has specific jurisdiction over both CTEK, Inc. and CTEK Sweden in this matter. Because there is an independent basis for exercising specific personal jurisdiction over both defendants, it is not necessary for this Court to determine whether general jurisdiction exists over either defendant, or whether CTEK, Inc. and CTEK Sweden are "alter egos."

## II. <u>Failure to State a Claim</u>

CTEK argues that NOCO failed to state a claim under either the OUTSA or the DTSA because (1) the A4 LAD Book does not constitute a trade secret; (2) NOCO failed to allege actionable misappropriation by CTEK, Inc.; and, (3) NOCO's common law claims are preempted under the OUTSA.

In considering a motion to dismiss for failure to state a claim, this Court must accept all material allegations contained in the complaint as true, and construe them in the light most favorable to the non-moving party. *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 630 (6th Cir. 2013); *Bishop v. Lucent Technologies, Inc.*, 520 F. 3d 516, 519 (6th Cir. 2008). To survive a motion to dismiss, a "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions cloaked as factual allegations will not suffice to survive a motion to dismiss. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient; "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007). A complaint must be facially plausible, containing "sufficient factual

matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570).

The OUTSA creates a private cause of action under Ohio law for the unauthorized use of trade secrets. To prevail on a such a claim, a plaintiff must establish: (1) the existence of a trade secret; (2) the acquisition of that trade secret through a confidential relationship; and (3) the unauthorized use of that trade secret. *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 985 (N.E. Ohio 2008). Similarly, the DTSA provides a private cause of action under federal law for owners of misappropriated trade secrets "if the trade secret is related to a product or service or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836. To bring a claim under the DTSA, NOCO must plead: (1) the existence of a protectable trade secret; (2) misappropriation of the trade secret by Defendants; and (3) that the trade secret is related to a product or service used in interstate or foreign commerce. 18 U.S.C. § 1836(b)(1).

The DTSA defines "trade secret" as follows:

> "[a]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
> 
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> 
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3).

Both parties rely on the six-factor test employed by the Ohio Supreme Court in *State ex rel.*

*Plain Dealer v. Ohio Dep't of Ins.*, 80 Ohio St.3d 513, 524, 1997-Ohio-75, 687 N.E.2d 661 for determining whether information constitutes a trade secret under the OUTSA and the DTSA:

> (1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

NOCO has adequately plead the existence of a trade secret under the OUTSA and DTSA based on the above *Plain Dealer* factors. First, CTEK argues that the contents of the notebook were known outside the business because any participant at the Expo could have gathered the same information. But NOCO alleges that the A4 LAD Book contained NOCO employees' thoughts, plans, and strategies which they developed based on information that they gathered. This is more than mere pricing information that could be obtained by visiting a business's booth at the expo.

While CTEK further argues that the contents of the A4 LAD Book do not constitute trade secrets because they are merely pricing lists and customer lists, NOCO alleges that the notebook contained more than mere customer and pricing lists. NOCO alleges that the notebook also contained "secrets, thoughts, and designs, regarding the company's sales methodology, targets, and financial impact." NOCO also alleges that the notebook contained "touches with potential customers, confidential notes regarding leads (including pricing information), and notes on market intelligence learned during discussions and meetings." NOCO explains that the book "necessarily reflects NOCO's sales strategy and provides invaluable insight into NOCO's methods, processes, targets, and financials."

CTEK also mischaracterizes *Heartland Home Fin., Inc., v Allied Home Mortgage Capital*

*Corp.*, 258 F. App'x 860 (6th Cir. 2008) in which the Sixth Circuit held that customer leads and prospective customer lists that were purchased from a third party and available to others did not constitute trade secrets. In that case, at least three of the plaintiff's competitors purchased the same leads as the plaintiff, and thus the information was readily available in the marketplace. *See Heartland Home Fin., Inc., v. Allied Home Mortgage Capital Corp.*, 2007 U.S. Dist. LEXIS 8882 *10-11 (N.D. Ohio Feb. 5, 2007). Further, a "significant number of employees" had access to the leads, and the plaintiff took insufficient precautions to ensure the secrecy of the information. *Id.* at *12-13. Based on NOCO's allegations, the information contained in the A4 LAD Book was not readily available in the marketplace, and only a limited number of NOCO employees had access to the notebook. As such, NOCO has adequately alleged that the contents of the notebook were not known outside their business.

As for the second and third factors, NOCO alleges that it kept the book confidential by having its employees monitor the book, storing it on the non-public side of the booth, employing non-disclosure agreements, marking the information confidential, and restricting access internally. While CTEK disputes that the book was on the non-public side of the booth or marked confidential, all facts must be viewed in a light most favorable to the plaintiff under the Civ. R. 12(b)(6) standard. Further, whether measures taken to keep information secret are reasonable under the circumstances cannot be decided at the pleading stage. *Taoglas Grp. Holdings Ltd. v. 2J Antennas USA*, Corp., No. 18CV1277-LAB, 2019 U.S. Dist. LEXIS 44093 *15 (S.D. Cal. Mar. 18, 2019). As such, NOCO adequately alleged that the information was not widely known within its business and that it took precautions to guard the secrecy of the information.

As for the fourth, fifth, and sixth factors, NOCO alleges that the A4 LAD Book contained

sales leads potentially worth millions of dollars, and that prior LAD Books have generated substantial sums for NOCO. NOCO further explains that the notebook has significant economic value because it contains NOCO's proprietary methods and strategies. Taking these allegations in a light most favorable to NOCO, NOCO has adequately alleged the fourth, fifth, and sixth factors. As such, NOCO has adequately plead all six factors under *State ex rel. Plain Dealer v. Ohio Dep't of Ins.*, and also satisfies the definition of trade secret under the DTSA.

To recover under the OUTSA or DTSA, NOCO must also allege that CTEK, Inc. and CTEK Sweden misappropriated NOCO's trade secrets. CTEK argues that NOCO has failed to allege that CTEK, Inc. misappropriated NOCO's trade secrets. The OUTSA defines misappropriation as follows:

> (B) "Misappropriation" means any of the following:
>
> > (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;
> >
> > (2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:
> >
> > > (a) Used improper means to acquire knowledge of the trade secret;
> > >
> > > (b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;
> > >
> > > (c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

O.R.C. § 1333.61. Similarly, the DTSA defines misappropriation as requiring the acquisition or disclosure of an improperly acquired trade secret. *See* 18 U.S.C. § 1839(5).

NOCO alleges that CTEK Sweden improperly acquired the notebook by stealing it from NOCO's booth. NOCO further alleges that both CTEK Sweden and CTEK, Inc. knew that the notebook had been improperly acquired and used the notebook "to contact and solicit NOCO's customers, usurp business opportunities, including with companies in the U.S., and unfairly takes sales away from NOCO." (Compl. ¶ 230). Despite this allegation, CTEK claims the Complaint is "silent on whether and how CTEK, Inc. was involved in the wrongdoing." But NOCO need not show exactly how CTEK, Inc. misappropriated the trade secrets at the pleading stage when the parties have yet to conduct discovery relative to the merits. *See Autodesk, Inc.*, 2015 U.S. Dist. LEXIS. When taking this allegation in a light most favorable to NOCO, NOCO adequately plead misappropriation under both the OUTSA and the DTSA.

Lastly, CTEK argues that NOCO's state law claims should be dismissed on the basis that those claims are preempted under the OUTSA. While the OUTSA creates a private cause of action for trade secret misappropriation, the Act "displace[s] conflicting tort, restitutionary, and other laws of [Ohio] providing civil remedies for misappropriation of a trade secret." R.C. § 1333.67. However, NOCO correctly asserts that preemption is not ripe for review at the motion to dismiss stage. *See, e.g., Exal Corp. V. Roeslein & Assoc., Inc.*, No. 4:12-cv-01830, 2012 U.S. Dist. LEXIS 143917 (N.D. Ohio Oct. 2, 2012) (declining to decide preemption under the OUTSA at the motion to dismiss stage as to avoid stripping the plaintiff of any recovery or precluding the plaintiff from discovering facts to support its common theories).

**Conclusion**

For the reasons set forth above, CTEK, Inc.'s and CTEK Sweden's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF #39) is hereby DENIED. Because this Court reached a conclusion on personal jurisdiction without addressing the issue of whether CTEK, Inc. and CTEK Sweden are "alter egos," NOCO's Motion to Compel Production of Documents (ECF #56) is hereby DENIED without prejudice as moot in light of this Memorandum Opinion and Order.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
Senior United States District Judge

DATE: February 18, 2020